Filed 12/20/22  P. v. Bryant CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B319417 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A648829) |
| v. | |
| STANFORD BRYANT, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ricardo R. Ocampo, Judge.  Affirmed.

Stratton S. Barbee, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Stanford Bryant appeals from an order denying his petition for resentencing under section 1172.6 of the Penal Code.[1]  We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

### A.  *Background*

In 1989, a jury convicted Bryant of one count of second degree murder.  (§ 187, subd. (a).)  The jury also found not true an allegation that a principal in the offense was armed with a firearm.  The court sentenced Bryant to prison for 15 years to life, and imposed certain fines and assessments.[2]  In 1991, we affirmed the judgment in an unpublished opinion.  (*People v. Jackson et al.* (Nov. 27, 1991, B048982) (*Jackson et al.*).)

In January 2019, Bryant filed a petition for resentencing under former section 1170.95, the predecessor to section 1172.6.  In February 2020, the trial court summarily denied the petition on the ground that Bryant failed to establish a prima facie case for relief.  We reversed.  (*People v. Bryant* (Apr. 8, 2021, B305785) [nonpub. opn.] (*Bryant*).)  We explained that "[b]ecause the record of conviction does not refute as a matter of law Bryant's statement that he was convicted based on the natural and probable consequences doctrine, the trial court erred in summarily denying his petition."  We directed the trial court

---

[1] Subsequent unspecified statutory references are to the Penal Code.

[2] The jury found Bryant's co-defendant, Calvin Jackson, guilty of first degree murder and, as to Jackson, found true that he personally used a firearm during the commission of the crime.  Jackson was sentenced to 25 years to life, plus two years.

to issue an order to show cause and conduct a hearing in accordance with former section 1170.95, subdivisions (c) and (d). We "express[ed] no opinion on Bryant's ultimate entitlement to relief following a hearing." (*Bryant*, *supra*, B305785.)

After remand, the trial court set the matter for an order to show cause hearing. Bryant was represented by counsel throughout the post-remand proceedings.

At the evidentiary hearing, the prosecution provided the court with an electronic copy of the reporter's transcript from Bryant's 1989 trial and the clerk's transcript from Bryant's direct appeal from the judgment.[3] Bryant did not object. Neither the prosecution nor the defense introduced witnesses or other evidence.

### B.    *The Record of Bryant's Conviction*

The following is our summary of the evidence presented to the jury in the 1989 trial, which was before the court in the 2022 evidentiary hearing.[4]

---

[3] The prosecution provided the documents to the trial court on "a disc," and neither paper documents nor the electronic media were initially part of our record on appeal. The Attorney General requested that we take judicial notice of our file in Bryant's direct appeal (*Jackson et al.*, *supra*, B048982), including the reporter's transcripts in that case. We informed the Attorney General that our record in that 30-year-old case had been destroyed and requested the Attorney General lodge with this court and provide to Bryant's counsel the record in Bryant's direct appeal in a digital format. The Attorney General has done so. Bryant did not object to the request for judicial notice, and we granted it.

[4] In accordance with our standard of review, in summarizing the evidence, we resolve all evidentiary conflicts

In 1988, Bryant and codefendant Calvin Jackson were members of the Palm and Oak Gangster Crips gang (Palm and Oak). Palm and Oak was at that time allied with the Fronthood Crips gang (Fronthood). Fronthood and Palm and Oak were rivals of Compton Neighborhood Crips gang (N-Hood). N-Hood was allied with another gang, the Kelly Park Crips.

On July 4, 1988, Fronthood gang member Antoine Hill, known as Tidy Bo, was killed near the Palm and Oak neighborhood where he lived. Gwen McElroy, a member of Palm and Oak, was Hill's girlfriend at the time. Palm and Oak members considered N-Hood responsible for Hill's death. According to a prosecution gang expert, because Kelly Park Crips is allied with N-Hood, they might also view Kelly Park Crips as responsible.

On July 26, 1988, Gary Brown and a Kelly Park Crips member, Dario Downing, were at a house in Lynwood with Desary Harris, Monique Cook, Neiko White, Nicole Hunter, and Tanisha Wilson, among others. That evening, McElroy spoke with Cook and Harris by telephone and asked why they had "those N-Hoods" at their house. Cook told McElroy that there were "no N-Hoods" at the house. McElroy insisted that there were, and told Cook that her "homeboys will be over there in five minutes." Cook responded by saying she would go to McElroy's house to fight her.

By the time Cook walked outside the house to drive to McElroy's, a Cadillac had pulled up and parked in front of the

---

and draw all legitimate and reasonable inferences in favor of the trial court's decision. (*Coffey v. Shiomoto* (2015) 60 Cal.4th 1198, 1217; *People v. Collom* (2020) 52 Cal.App.5th 35, 41.)

house.  Bryant, Jackson, and two other men got out of the car.  Other men arrived in a Chevrolet Chevette.  Cook walked toward her car and Harris walked from inside the house to the driveway.

One of the men who got out of the Cadillac asked Cook, " 'Who's in the house?' "  Cook said, " 'I don't know.  Go see for yourself.' "  Bryant asked where are the N-Hoods.  Harris told him there were no N-Hoods there.

As Cook walked toward her car, two of the men walked past her toward the back of the house while Bryant and another man followed Cook to her car.  As Cook tried to enter her car, Bryant grabbed her, slapped her face, hit her with a closed fist, and choked her.[5]  Cook walked back toward the front of the house and Bryant followed about 20 feet behind her.

Meanwhile, Brown, Downing, and several others were in a bedroom near the back of the house.  Jackson stuck his head inside the window of the room and asked where are the "N-Hoods at?"  Downing denied that there were any N-Hoods in the house and said, " 'This is Kelly Park Crips.' "  Jackson said, " 'Fuck Kelly Park Crips.  This is Palm and Oak.' "  Jackson then left the window and ran toward the front of the house and the street.

---

[5] Cook did not identify Bryant as the person who assaulted her, and when asked at trial if she saw anyone in the courtroom who was at the Lynwood house "that day," she responded, "No."  The trial court's finding that Bryant was the person who assaulted Cook is supported, however, by Harris's testimony that she saw Bryant choking Cook, Cook's testimony that the person who assaulted her is the person who chased after Downing after the shooting, and Downing's testimony that Bryant is the person who chased after him.

Downing and Brown briefly discussed getting into a fight with the interlopers, unaware that the opponents may have guns.

Outside the front of the house, a witness saw a man run to the Cadillac, pull a rifle from the front seat of the car, and run back toward the back of the house. People inside the house began yelling, " 'They got guns. They got guns,' " and someone yelled they "got [an] AK" or " 'it's an A.K. gun.' "

Jackson and two or three other men gathered at the rear of the house. Jackson held a rifle and carried a handgun in the waistband of his pants. The men kicked in the back door, and Jackson shot Brown three times in a hallway inside the house. According to a medical examiner, one shot, to Brown's head, was "immediately fatal." A firearms examiner concluded that the bullets were fired from a semiautomatic AK-47 or similar rifle.

About the time the shooting occurred, Cook had returned to the front door of the house after Bryant's assault against her.

When Downing heard the gunshots, he turned and saw three men at the back end of the hallway. He then ran through the house, past Cook, and out the front door, where he ran into Bryant on the front porch and pushed him out of the way. Bryant then chased after Downing.

Downing jumped over a chain link fence or gate in the front yard of the house, while Bryant grabbed at his clothing. Downing, however, was able to get away.

Jackson, meanwhile, ran back to the Cadillac, where he put the rifle in the front seat or the trunk of the car. He and his companions then fled in the Cadillac and the Chevette.[6]

The District Attorney charged Bryant and Jackson with murder and they were tried together. The jury was instructed on the natural and probable consequences doctrine[7] and the prosecutor relied on that theory in her closing argument.[8] As

---

[6] No one identified Bryant as a person who fled in either the Cadillac or the Chevette.

[7] The court's instruction concerning the natural and probable consequences doctrine, CALJIC former No. 302, did not specify a target crime. The court gave the following instruction: "One who aids and abets is not only guilty of the particular crime that to [his] knowledge [his] confederates are contemplating committing, but [he] is also liable for the natural and probable consequences of any criminal act that [he] knowingly and intentionally aided and abetted. You must determine whether the defendant is guilty of the crime originally contemplated, and, if so, whether the crime charged [in [c]ount[ ] I] was a natural and probable consequence of such originally contemplated crime."

[8] The prosecutor explained the natural and probable consequences doctrine to the jury as follows: "If you say, well, what if he didn't know he was going to kill? Maybe they had that assault rifle, but they were just going to show up and show how hot Palm and Oak is or whatever. It's a natural and probable consequence if you go to a house and you're asking or you're calling out gang names, and you're looking for someone. You're viewed as an enemy, and you go there with an assault rifle. It's a natural probable consequence that, when an assault rifle is fired, someone will be killed, and that's all you need to establish aiding and abetting, and that's all you need to find the defendant Bryant guilty of the first degree murder."

noted above, the jury found Bryant guilty of second degree murder and found the firearm allegation not true.

## C. *The Trial Court's Ruling on Bryant's Petition for Resentencing*

At the evidentiary hearing on Bryant's petition for resentencing, the court stated that it had "gone through the entire record of conviction" and "looked at the appellate opinions . . . for procedural history only." The court stated that it was acting "as an independent fact finder in this case to determine whether beyond a reasonable doubt that . . . Bryant is guilty under the current [sections] 188 and 189 in the murder of the victim, Gary Brown." The court denied the petition because "the evidence in this case shows beyond a reasonable doubt . . . Bryant is guilty of murder, guilty of directly aiding and abetting this murder."

The court explained: "The only reasonable conclusion that this court can find factually and what was evidence here is that there was a concerted action between . . . Bryant and . . . Jackson and the two other unidentified individuals. They all had a motive, a motive to retaliate against the gang member or a gang that had killed one of their own. And the only reasonable interpretation can be that the motive was to kill a rival gang member[,] which they did. His actions going to, looking for N-Hood, his actions going to the scene, his actions also as they escaped together after the shooting, the court finds that the records show that beyond a reasonable doubt [appellant] is in fact guilty of murder even as the law is written today under [sections] 188 and 189 made effective . . . January 1st of 2019."

Bryant timely appealed.

8

## DISCUSSION

### A.    *Trial Court Standards Under Section 1172.6*

Senate Bill No.1437 (Reg. Sess. 2017−2018) (Stats. 2018, ch. 1015, § 4, pp. 6675-6677), which enacted former section 1170.95, the predecessor to section 1172.6, "created a special procedural mechanism for those convicted [of murder] under the former law to seek retroactive relief under the law as amended." (*People v. Strong* (2022) 13 Cal.5th 698, 708.)  Among other changes to the law of murder, the required mental state of malice, except under circumstances not applicable here, can no longer "be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2, p. 6675.)  The statute thus effectively "eliminated aiding and abetting murder liability under the natural and probable consequences theory." (*People v. Gentile* (2020) 10 Cal.5th 830, 848 (*Gentile*); see *People v. Offley* (2020) 48 Cal.App.5th 588, 595 ["the natural and probable consequences doctrine can no longer support a murder conviction"].)

Senate Bill No. 1437 did not, however, eliminate "all aiding and abetting murder liability." (*Gentile, supra,* 10 Cal.5th at p. 848.)  Direct aiding and abetting liability for murder remains a viable theory "because a direct aider and abettor to murder must possess malice aforethought." (*Ibid.*)  Because malice may be either express or implied (§ 188, subd. (a)), a direct aider and abettor of murder acts with the requisite mental state if he or she acts with either the intent to kill or with knowledge that the perpetrator intends to commit "a life-endangering act," with the intent to aid the perpetrator in the commission of the act, with knowledge that the act is dangerous to human life, and in conscious disregard for human life.  (*People v. Powell* (2021) 63

9

Cal.App.5th 689, 713 (*Powell*); see *People v. Maldonado* (Dec. 8, 2022, A161817) ___ Cal.App.5th ___ [2022 Cal.App. Lexis 1002 at p. *9] ["[d]irect aiding and abetting an implied malice murder remains a valid theory" of murder]; accord, *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 391–392, petn. for review pending, petn. filed Nov. 28, 2022, S277466.)

When, as here, a court issues an order to show cause and holds an evidentiary hearing pursuant to section 1172.6, subdivision (d), the court acts "as an independent fact finder" in determining whether the petitioning defendant is entitled to relief. (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745 (*Garrison*).)[9] At the hearing, the prosecution bears the burden of proving beyond a reasonable doubt that the defendant "is guilty of murder or attempted murder" under the law as amended by Senate Bill No. 1437. (§ 1172.6, subd. (d)(3); see *Garcia, supra,* 82 Cal.App.5th at p. 966.) The court may consider evidence previously admitted at the petitioner's trial that is admissible under current law, and the parties may offer new or additional

---

[9] Bryant contends that the prosecution must "show, beyond a reasonable doubt, that the jury [in his original trial] convicted [him] based on some theory other than the felony murder rule or the natural and probable consequences theory." The contention is without support in the statutory text and contrary to case law. (See *Garrison, supra,* 73 Cal.App.5th at p. 745 [trial court acts "as an independent fact finder, to determine beyond a reasonable doubt whether defendant is guilty of murder under a valid theory of murder"]; accord, *People v. Henley* (Dec. 5, 2022, D079001) ___ Cal.App.5th ___ [2022 Cal.App. Lexis 988 at p. *21]; *People v. Garcia* (2022) 82 Cal.App.5th 956, 966 (*Garcia*); *People v. Vargas* (2022) 84 Cal.App.5th 943, 951 (*Vargas*).) We reject the argument.

evidence. (§ 1172.6, subd. (d)(3).) If the prosecution fails to sustain its burden of proof, the prior conviction is vacated and the defendant is resentenced on any remaining charges. (*Ibid.*)

When the court holds an evidentiary hearing pursuant to section 1172.6, subdivision (d), and concludes that the prosecution has satisfied its burden of proof, "the reviewing court applies the substantial evidence standard to the superior court's findings." (*Vargas*, *supra*, 84 Cal.App.5th at p. 951; accord, *People v. Ramirez* (2021) 71 Cal.App.5th 970, 985.) Under this standard, " ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' [Citations.]" (*Vargas*, *supra*, 84 Cal.App.5th at p. 951.)

Here, there is substantial evidence to support the court's determination that Bryant is guilty of murder as a direct aider and abettor under the law as amended by Senate Bill No. 1437. The court, as fact finder in this case, could reasonably conclude that the incident on July 26, 1988 at the Lynwood house was an act of revenge for the killing of Antoine Hill approximately three weeks earlier. Hill was a member of Fronthood, a gang allied with Palm and Oak, and the boyfriend of McElroy, a member of Palm and Oak. According to a prosecution gang

11

expert, members of Palm and Oak considered N-Hood to be responsible for Hill's death. McElroy, apparently believing that N-Hood members were at the Lynwood house on July 26 told Cook that her "homeboys will be over there in five minutes." Shortly afterward, Bryant and Jackson, both Palm and Oak members, arrived with others at the Lynwood house. Bryant got out of the Cadillac and asked Cook and/or Harris where the N-Hoods were, while Jackson went toward the back of the house to a bedroom window, where he asked the occupants the same question. The court could reasonably infer from these facts that Bryant, Jackson, and their compatriots went to the Lynwood house to seek revenge for the murder of Hill.

There is also substantial evidence that the planned act of revenge involved shooting a rival gang member. A semiautomatic rifle was in the front seat of the Cadillac when Bryant and Jackson arrived in that car at the Lynwood house. The court could reasonably infer that the occupants of the Cadillac, including Bryant, were aware of the rifle's presence and of the likelihood that it would be used against N-Hoods if any were found at the house.

Jackson, who used the semiautomatic rifle to shoot Brown three times, indisputably harbored the intent to kill. Even if Bryant did not share that intent, the court could infer that he knew that Jackson would use the gun to carry out the plan of revenge, that such use "is dangerous to human life," and any acts he took to aid and abet Jackson would be with conscious disregard for human life. (See *Powell, supra*, 63 Cal.App.5th at p. 713.)

There is substantial evidence that Bryant aided and abetted Jackson's actions by accompanying him to the Lynwood

12

house, asking about the presence of N-Hoods upon their arrival, controlling the scene in the front of the house and preventing Cook from leaving the property, and attempting to stop Downing—a potential second victim of the plan for revenge— from leaving the property.

Because the court's findings are supported by substantial evidence, we affirm the order denying Bryant's petition.

## DISPOSITION

The order denying Bryant's petition for resentencing is affirmed.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

WEINGART, J.

13